James Franklin SMITH, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-14894.

Court of Criminal Appeals of Oklahoma.

April 8, 1970.

Don Anderson, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

James Franklin Smith, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County; William S. Myers, Jr., bery with Firearms; he was sentenced to serve 45 years in the state penitentiary, and appeals.

The record discloses that the first witness called by the State was Homer Piatt, the victim of the robbery. He testified that on January 12, 1968, he was employed as assistant manager at the Safeway Store at 24 East Second Street in Edmond, Oklahoma, and was working at the store on the evening of that date. He stated that about 7:50 p. m., while he was in the office box, the defendant, wearing coveralls and an orange cap, entered the store, came to the box, placed a T. G. & Y. sack on the counter, and pointed a gun at the witness, demanding the money in the store. The witness complied, giving him $2,400, and the defendant left. Piatt then called the police who showed him five pictures, one of which he identified as being that of the defendant and the robber. The witness later identified the defendant in a lineup as being the robber.

Dick Adams, an employee at the Safeway Store, testified that on the night of January 12, 1968, he was working at one

of the check stands of the store. He said that he needed some change and went to the office box, where he found a man whom he identified as the defendant standing in front of the box with a gun. The witness described the man's clothing as coveralls and an orange flourescent hat. Adams said that the defendant told him to stand aside, that there was a robbery going on, and that Homer Piatt gave the defendant a T. G. & Y. sack.

James E. Stafford testified that on the evening of January 12, 1968, he was working at the Safeway Store in Edmond in the office box with Homer Piatt when the defendant came to the box, put a T. G. & Y. sack on the counter and ordered Piatt to fill it with the money in the safe. Stafford said that the defendant, holding a gun in his hand, ordered him to step aside, and about that time Dick Adams, another employee, came to the box for change, and was also told by the defendant not to interfere, and to stand to one side. Stafford testified that Piatt filled the sack given him by the defendant, that the defendant questioned whether that was all of the money, and that when he was assured of such by Piatt, took the sack, turned and left the store. The witness said that he later identified the defendant from pictures shown him by the police.

Raymond Kerr, an officer with the Oklahoma City Police Department, testified that he was on duty on the night of January 12, 1968, and that having received a report of an armed robbery in Edmond by a man fitting the description of the defendant, whom he knew, went to the defendant's home in Spencer. The witness stated that he saw the defendant, accompanied by a woman and two children, drive a red and white GTO into the driveway of the defendant's home, get out and proceed to an out-building behind the garage. Kerr said he then approached the defendant, told him he was under arrest for Armed Robbery, searched and handcuffed him, and advised him of his rights. The witness

further testified that he was given a gun by Kent Harrison, a detective with the Oklahoma City Detective Bureau, and that he took from the woman accompanying the defendant, a shoulder bag containing a T. G. & Y. sack which held $2,400.00.

Kent Harrison, a detective with the Oklahoma City Police Department, testified that on the night in question he was summoned from his home by Officer Kerr, and accompanied him to the Edmond Police Department, and then to the Safeway Store in Edmond to assist in the identification of an armed robbery suspect. The witness said he took several pictures with him and from these obtained an identification of the robber as James Franklin Smith, the defendant. Harrison stated he went with Kerr to Smith's residence in Spencer, where he saw the defendant drive up in a red car, accompanied by a woman and two children. The witness testified that he recovered a .22 caliber pistol from an out-building shortly after Smith was seen coming from there, and helped take a bag from the woman who was with Smith. He advised the defendant of his rights and took him to the county jail.

Bob Hammer, a deputy sheriff of Oklahoma County, testified that on January 12, 1968, he was on duty in the sheriff's office when Officer Kerr and Detective Harrison brought in the defendant and handed the witness an automatic pistol, clip and bullets, and a sack of money containing $2,400.00, which he marked and placed in envelopes to retain as evidence.

Steve Meador, a certified court reporter, testified, outside the hearing of the jury, that a transcript made by him of a hearing on a Writ of Habeas Corpus for one Ann Hyatt was a true and correct statement of the proceedings. Within the presence of the jury the witness stated that at that Habeas Corpus hearing the defendant said, in effect, that he had robbed the Safeway Store in Edmond of $2,400.00 with the aid of an automatic pistol, that he later joined Ann Hyatt, but that she did not participate in, or have knowledge of, the robbery, and that he put the sack of

money in her handbag without her knowledge so that the police would not find it on his person.

The defendant presented no witnesses.

The defendant first contends that the trial court erred in failing to instruct the jury that they should determine whether the judicial confession was voluntarily made, free of any promise or coercion, notwithstanding the fact that retained counsel for the defendant did not request the giving of such an instruction, nor was there any evidence tending to raise any question about the confession being voluntarily made. Counsel for the defendant further concedes that the specific question here presented has not been ruled on in this jurisdiction, but relies on the case of Williams v. State, Okl.Cr., 86 P.2d 1015, involving an extra-judicial confession, wherein this Court held that it was error for the trial court not to instruct the jury on this issue notwithstanding the fact that the defendant did not request that such an instruction be given.

Since neither the State nor the defendant have cited authority in this or any other jurisdiction dealing with the specific issue here presented, we are obliged, under the unique facts in the instant case, to determine whether the court's failure to give such an instruction constituted such error as would require a modification or reversal.

We believe that determinative of this issue are the undisputed facts that the record affirmatively discloses that subsequent to the defendant's arrest he was twice given the Miranda warning by the officers and that prior to incriminating himself in the Habeas Corpus proceeding of Ann Hyatt, he had been thoroughly advised of his constitutional rights and knowingly and understandingly waived them. Illustrative of the warnings given in casting light on the defendant's motivation in making the incriminatory statements is the following proceeding conducted outside the hearing of the jury and found at page 154 of the record:

"[MR. PORTER, DEFENDANT'S RETAINED TRIAL COUNSEL] Q. Have any threats or duress or promises been made to you in order to get you to give this testimony?

A. No.

Q. I represent you, don't I?

A. Yes.

THE COURT: And Mr. Porter has discussed it with you, right?

A. Yeah.

Q. (BY MR. PORTER) And you understand the basis of your testimony here today, that this is being transcribed and you are under oath?

A. Yes, I do.

THE COURT: And it can be used against you.

Q. (BY MR. PORTER) And can be used against you in any further criminal prosecution?

A. I understand that.

Q. And you're doing this of your own free will and accord?

A. Yes, sir.

Q. Why do you want to do this?

A. She wasn't involved, so, why get her in trouble too."

There can be little question in the instant case that the defendant was fully aware of his constitutional rights and had been advised of them by both his counsel and the Court, and was aware that his testimony might be used in evidence against him as illustrated by the foregoing proceeding, but that his motivation in giving the testimony was to clear an innocent person. We also observe that independent of the admission of the judicial confession, the undisputed proof of defendant's guilt was overwhelming. We are, therefore, of the opinion that where, as in the instant case, the other evidence of the defendant's guilt is overwhelming, and the trial court conducts an evidentiary hearing, outside the hearing of the jury, to determine the admissibility of a judicial confession, and at the conclusion of said hearing deter-

mines that prior to making the judicial confession the defendant had thoroughly been advised of his constitutional rights and he had knowingly and intelligently waived the same with full knowledge of the nature and consequence of such waiver, and thereafter, the trial judge admits the testimony of the defendant's judicial confession for the consideration of the jury; and not one scintilla of evidence is offered questioning the voluntary nature of such judicial confession, nor is the judge requested to instruct the jury to determine the voluntary nature of such confession, no error is committed by the trial court for there is no controverted question of fact to be determined by the jury.

 Finding this assignment of error without merit, we shall next consider defendant's contentions that the verdict was not sustained by the evidence, and the punishment assessed was excessive. We have repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict. In the instant case there was ample evidence, in no way contradicted, that the defendant was guilty of the crime of which he was charged. We are further of the opinion that the punishment assessed in that verdict was not excessive. No maximum term of years is set by statute for the crime here committed, and the offender may suffer death for his action. Since the defendant was given a punishment well within the statutory limit, and the sentence imposed is not so excessive as to shock the conscience of the Court, we reiterate our holding in Clouse v. State, Okl.Cr., 389 P.2d 1002:

> The question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each case, and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the Court.

Having dealt with all the assignments of error urged on appeal, and finding that the defendant had a fair and impartial trial, that the issues were properly submitted to the jury and the evidence supports the finding of the jury, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, P. J.; and NIX, J., concur.